# Dawson *v.* Williams *et al.*

Although a court of chancery will not ordinarily take jurisdiction of a case for rent, yet when the time of payment or the amount to be paid is uncertain, or when the distress is evaded or obstructed by fraud, the court will take jurisdiction and give relief.

The bill in this case states that some time during the year 1837, James L. Dawson leased a store house in the city of Natchez, to N. L. Williams, and gave him a written lease, by which it was provided that Williams should pay Dawson so much yearly rent as should be appraised by two persons, the one to be chosen by Dawson, the other by Williams; that on the 1st day of April, 1841, there was a year's rent due and unpaid; that on the 30th day of March, 1841, Dawson notified Williams that he had appointed one John M. Lawrence as an appraiser of the yearly rent of said store on his part, and that Williams told Dawson that he had appointed one Joseph Bradley on his part; that during the occupancy of the store by Williams he had therein a valuable assortment of books, drugs and store furniture; that Jackson D. Williams and William Ballantyne were partners with N. L. Williams in the ownership of the said goods, and that they had no visible property other than the said goods, and that Dawson relied solely on his lien on said goods as security for his rent. That on the morning of the 31st March, 1841, Dawson discovered that the store room was closed; that on the night previous Williams, in order to prevent the levy of a distress by Dawson upon the said goods and chattels, had clandestinely removed them and secreted them. Dawson then caused his appraiser to meet Bradley and request an appraisement of the rent, but Bradley refused to act, and Dawson's appraiser estimated the rent at $1,250; whereupon Dawson issued an attachment for that amount against the goods so removed, but failed in finding the same. N. L. Williams afterwards told Dawson, that on the 29th of March, 1841, the said partnership conveyed all their property in the said goods and chattels for

the benefit of one Payson Williams, to Lyman Potter, as trustee, in whose possession a portion of said goods then were; that another portion of said goods were in the possession of one Patrick McGrane, and that Potter and McGrane knew at the time they received said goods that they were subject to Dawson's lien for rent.

The bill makes all these persons parties, prays for a discovery on their part of all the matters charged; that the goods be declared subject to Dawson's lien, and that they be sold to satisfy the same; and also that the defendants pay Dawson the sum of $1,250, that being the amount of rent due.

To this bill there is a general demurrer by Ballantyne, one of the defendants.

VAN WINKLE and POTTER for the demurrer.

This is a bill filed by a landlord to subject goods to an alleged lien for rent.

The bill is defective in the following particulars:

First. It does not show that the complainant had the reversion of the leased premises at the time the rent became due, or had any interest in or claim to the rent.

Second. It avers a lease by complainant to N. L. Williams, one of the defendants; but it does not show what term was granted, or that such term was unexpired at the date of the rent falling due, or that any of the defendants occupied the premises during the year for which rent is claimed. It merely states that rent for the year ending 1st April, 1841, was due on that day.

Third. It does not show any rent in arrear and unpaid, but merely states when the rent fell due, and that the defendants knew the rent was unpaid, with a general charge that the goods are subject to a lien for rent.

Fourth. It shows that no "fixed rent" was due; that the rent was to be annually appraised, but shows no appraisement nor any valid reason why it was not made.

The appraisement referred to, (Exhibit A,) is not a valuation of the rent of the premises described in the bill and leased to N. L. Williams, but of the store occupied by N. L. Williams and Co.

The bill does not mention any such occupants, but charges a sole occupation by N. L. Williams.

The bill states that N. L. Williams appointed one Bradley appraiser on his part. This exhibit does not show a joint appraisement by Bradley and Lawrence. There is no averment of a refusal by Bradley to act, except that he refused to act at that time.

Fifth. There is no averment that any goods were on the leased premises at any time during the year for which the rent is claimed; or that any goods were removed from the said premises; or that there were not, at the time the bill was filed, goods on the said premises sufficient to pay the rent.

Sixth. It avers that the defendants, Ballantyne and J. D. Williams, were partners with N. L. Williams in the ownership of the goods; but does not show that these defendants were partners in the occupancy of the store, or otherwise occupied it, or show how Ballantyne and J. D. Williams are liable for rent, or that they were concerned in or privy to the removal of the goods.

Seventh. Exhibit B. shows that the defendant, Lyman Potter, was not trustee as charged in the bill; nor is it alleged that he has any of the goods: no cause of complaint is alleged against him.

Eighth. It states that the defendant, N. L. Williams, claims that the complainant owes him, and therefore will not pay rent. This claim is not denied. The complainant states that he does not believe the defendant, N. L. Williams, has any "legal" claim against him.

Ninth. The prayer of the bill is, that all the defendants shall be decreed to pay the rent; and also, that the goods when discovered shall be sold to pay the same.

Tenth. The complainant has an adequate remedy at law.

The various statements in the bill, that the complainant is "informed," and that the defendant "admitted," &c. are not considered as sufficient allegations of facts. Mitford 42, note n.

Before a landlord can distrain for rent, or assert in any manner his lien on goods found upon or removed from the demised premises, he must show,

First. A demise at "a certain and fixed rent, so that a tenant may know, in case he is threatened with a distress, what he is to pay to prevent it; or, in case his goods shall be distrained, what

9*

sum to tender, in order to retain them. Valentine *v.* Jackson, 1 Wend. 302; Wells *v.* Hornish, 3 Penn'a 30; 4 Amer. Com. Law, 483.

Second. That he (the landlord) is entitled to the legal reversion in the demised premises at the time the rent becomes due. 3 Black. Com. 6, note 8.

Third. A continuing relation of landlord and tenant at the time of rent due—i. e. the rent must fall due before the term expires; or (under our statute) distress must be made within six months thereafter, "and during the continuance of such landlord's title or interest, and during the possession of the tenant from whom such arrears became due." How. & Hutch. ch. 43, sec. 58; Williams *v.* Zulop, 2 Wend. 148; 5 Cow. 407; Pemberton *v.* Van Rensselaer, 1 Wend. 307.

Equity will not grant a remedy (for rent) beyond what, by analogy to the law, it ought to grant. 1 Sto. Eq. 635.

As in case of innkeeper's claim against his lodger. "Chancery has no jurisdiction of such demand, independent of the lien." Black *v.* Brennan, 5 Dana, 311.

The prayer of the bill is bad, for that it seeks a decree against *all* the defendants for the amount of the rent claimed, *and also* that the goods may be sold to satisfy the rent.

Eustis contra.

First. The bill shows a lease from complainant, entry and occupancy under it, and rent due, payable 1st April, 1841. No further specification of the landlord's title could be required, as the tenant could not traverse the title of his landlord.

Second. The particulars of the lease are amongst the things sought to be discovered. The bill does show occupancy by the defendants during the year ending April, 1841. It charges that the rent was due, and alleges that the tenant did not controvert the fact, but named his appraiser, and resorted to fraud, not to law, to defeat the payment.

Third. Same reply. Bill alleges that there was no controversy about there being rent due. The laws of the land give a specific lien. There is an equitable lien without that, binding upon all who have notice.

Fourth. The rent was fixed by lease at an appraisement. It was the defendants' own wrong if the appraisement was not satisfactory. The party demurring is charged as a confederate in the wrong.

Fifth. The bill charges that the appraisement in the exhibit was of the rent of the same premises.

Sixth. The bill shows that the defendants' appraiser refused to act. The complainant could not make him act; but must take the other alternative, to act without him; to support the fairness of the valuation it alleges it was the rent paid by the tenant for the previous year.

Seventh. There is an express averment that the complainant relied on the goods in the store for the rent due April, 1841; and that said goods, of great value, were removed and secreted, on the night of the 30th March, 1841, and the levy entirely defeated by the removal of the goods.

Eighth. Ballantyne and J. D. Williams are charged as part owners of the goods in the store, and charged as participating in the conveyance and removal to defeat the levy.

Ninth. The particular construction of exhibit B is immaterial. The principle is beyond question, that a party receiving a fund subject to a trust, with notice, is bound by the trust. The facts are charged. Equity raises the trust.

Tenth. Rent is not subject to offset of an ordinary kind. The denial of debt is sufficient, and the pretences of defendant, alleged in a bill, are hardly matter of demurrer.

Eleventh. The prayer of the bill is perhaps informal, but is not in the words stated in the brief of defendants. It prays that the defendants be decreed to pay the rent, and the lien be declared on so much sold as may be necessary to satisfy the claim. This is not claiming to be twice paid. If the defendants pay, none of the goods would be required to satisfy the claim; so that a decree could be made upon this prayer. The words "or in default" have probably been omitted by a clerical error.

The CHANCELLOR.

This case was submitted on the general demurrer of Ballantyne. Although a court of chancery will not ordinarily take ju-

risdiction of a case for rent, yet where the time of payment or the amount to be paid is uncertain, or when the distress is evaded or obstructed by fraud, the court will take jurisdiction and give relief.   1 Sto. Eq. 636.

In this case the *amount* of rent was uncertain, having to be determined by appraisers appointed for that purpose.   The distress is also alleged to have been evaded by fraud.

The case thus presents, clearly, two distinct features upon which equity takes jurisdiction.   I do not think the prayer of the bill is double, as is supposed.   The latter part would seem to refer to the fund only, from which satisfaction may be had; but if defective, an amendment would be allowed.

The demurrer must be overruled.